Madam Clerk, please call the next case. 10Z305, People v. John Galvan. Counsel, would you kindly approach, state your name and your interest in this matter. Good morning, Your Honors. Tara Thompson. I'm counsel for the petitioner John Galvan. Good morning, Your Honors. Assistant State's Attorney Michelle Grimaldi-Stein for the People of the State of Illinois. Good morning. Ms. Thompson, if you're ready to proceed. May it please the Court and Counsel, I first want to thank you on behalf of my client John Galvan, who obviously can't be here today, but he wanted me to express his thanks for your time and interest in his case. His case is an unusual one because he was originally granted an evidentiary hearing below and then nearly seven years passed without that happening. Then when a different judge reconsidered his case, they granted a renewed motion to dismiss by the state. We're here to argue, obviously, that the original court's decision was correct and he should receive an evidentiary hearing on his claims. I want to talk most importantly about his claim of actual innocence because this is a case of innocence and it's the issue that's really driving his petition, although there are obviously other claims made as well. This is a case where there is not significant evidence of his guilt. There's a confession, there are factual issues with that confession, and there's obviously the issue of misconduct, which was raised in his post-conviction petition and the supplements to that petition. And then there's evidence from one person, testimony from one person, saying that he saw Mr. Galvan walking into the alley in the area where the fire occurred shortly before it occurred. And that's really the evidence against him. The post-conviction petition that was before the court and the evidence that Mr. Galvan wants to present in an evidentiary hearing is significant and sufficient to overturn whatever evidence there was of his guilt at the time of trial. First, there's this witness, Frank Partita, and what Frank Partita's affidavit attached to Mr. Galvan's petition says is that he was with the witness who said that he saw Galvan walking into that alley, that he knows that Mr. Galvan was not one of those three people that was walking in the alley. And that is critical evidence. That's significant. More importantly, he also testifies that he was interviewed several times by members of the Chicago Police Department, by others, and that he told them the same information, that they showed him photographs, that he told them that he recognized the people in those photographs, but that they were not the people that were walking through the alley. This is important evidence, which is enough to overcome the evidence that was presented in Mr. Galvan's guilt at trial. Socorro-Flores' affidavit also further supports that. She also testifies that she received significant pressure from the police to identify John Galvan and that she persisted in saying that John Galvan was not among the group of people that she also saw throwing some item into the house that ultimately burned down. In addition to this, there's evidence of some pattern of misconduct by Detective Switzke. John Galvan testified that he was brought into that interrogation room and he testified through the affidavit that's attached to his petition that he was brought into that interrogation room and that he was threatened and coerced into giving the statement that he gave. And there's additional evidence which has come up since the time of his trial, which is counsel attached to the petition, which shows that there have been other similar allegations made against Detective Switzke. This is all evidence that a court should hear. This is an evidence that was appropriate to be dismissed at the second stage, and that's why Judge Epstein was correct in granting an evidentiary hearing on these claims in the first place and allowing them to go forward. In addition to his claim of actual innocence, he also has an ineffective assistance of counsel claim. And this claim is in some ways an alternative claim to the actual offense claim because it also has to do with his counsel's ability to call Frank Partita and to show some of the inconsistencies between Mr. Galvan's confession and some of the expert testimony that was presented at trial. And this is another critical issue that requires some examination below, some evidentiary hearing to resolve. You know, the state has argued that Frank Partita is not new on the one hand because they say that this is information that counsel could have discovered. Well, if that's true, there's an ineffective assistance of counsel claim here that also needs to be resolved. And the only way to really resolve this is to have an evidentiary hearing below where Mr. Partita can testify about what he would have said at the time of trial and what he's saying now and for someone to make a determination about what that means with respect to the evidence that was presented of Mr. Galvan's guilt. Similarly, those affidavits from Frank Partita and from Socorro Flores support a Brady claim because as both those witnesses testified, they told the police that they couldn't identify Mr. Galvan. This is evidence that the police and prosecutors presumably had, but police certainly had based on those affidavits, and yet this is information that was never disclosed to Mr. Galvan's counsel. Again, this is a Brady claim issue that needs an evidentiary hearing below to resolve. We've made a lot of the case argument in our opening brief, and I'm happy to answer questions about that, but I think it's pretty clear on its face. There was an appeal in the middle of some of this discovery that occurred after Judge Epstein ordered there to be a hearing. The state argued in its appeal up to the Supreme Court for a supervisory order that there shouldn't be an evidentiary hearing at all, and the Supreme Court denied that supervisory order. Given that, there should have been a hearing. There shouldn't have been an opportunity to again pursue this motion to dismiss. Doesn't that law of the case not only apply to final orders? I think it applies whenever you have some final order that's being decided, and here you have them making that very specific argument to the Supreme Court, saying to the Supreme Court that they believe that nothing should go forward and that there shouldn't be a hearing. You have the Supreme Court saying the exact opposite, saying no, we're not going to intervene at this point. Was Judge Epstein's order a final order or an interlocutory order? It was an interlocutory order, Your Honor. And if the law of the case doctrine only applies to final orders, then does the law of the case doctrine apply? We believe that it does, but regardless, I think it's instructive. You have courts looking at this issue and saying that they also, and the Supreme Court looking at this issue and declining to intervene, and as we've argued, we're not solely relying on the law of the case issue. They looked at the issue, but they didn't rule on the issue, right? On the merits of the issue. I mean, that's true that there wasn't a direct ruling on the merits, but there's an implied decision by the Supreme Court there declining to intervene. And I only put this out to say that there's other courts that have looked at the process of this case as it's proceeded. We're not relying solely on that doctrine. And as we've argued, on the merits, Judge Epstein was correct to order there to be a hearing. But the ruling on the motion for supervisory order doesn't support the lower court's decision and it doesn't have a, it doesn't, it's not a ruling on any of the issues. It's just a denial of the motion to review it, right? It's a denial of the state's request for the Supreme Court to order that there, to overturn what Judge Epstein had to say. That's correct. Did Judge Epstein, or did Judge Brosnahan have a right to change Judge Epstein's order since it was an interlocutory order? Certainly, again, as we've acknowledged in our brief, Judge Brosnahan had a right to disrupt an order to make a renewed motion, to deal with a renewed motion if Judge Epstein's order was patently incorrect. I think that we also have an argument, as we have made in our briefs, that the post-conviction statute really only allows for one opportunity to make a motion to dismiss. And I know there's some dispute in this case about that because the state has argued that, you know, they asked for an opportunity first to brief the issue of the timeliness of the petition and then to deal with the merits issue at a later date. Certainly, if there was really no issue that should have gone forward, it's possible that Judge Brosnahan had a right to step in, but not under these facts and not in the situation when nothing had really changed since Judge Epstein issued his order and since Judge Epstein's decision was correct. Well, she certainly had a right to step in. The question becomes whether or not she had a right to change the order, and the Supreme Court has prescribed some circumstances under which a successor judge can change a predecessor judge's order. The question becomes, was Judge Brosnahan acting within the purview of the Supreme Court's rules? Was there any new or additional evidence introduced after Judge Epstein made his order? Did the circumstances change at all after Judge Epstein made his order? I don't believe so, Your Honor. And is now Justice Epstein just for the record, formerly judge, now Justice Epstein? Now Justice Epstein, no. And, in fact, what happened after he issued that order was that he ordered discovery, which allowed counsel to get additional evidence that only further supported Mr. Galvin's claims. So, you know, his counsel, as he should have, continued to investigate and develop evidence, but there was certainly nothing that was learned afterward that should have given the court a reason to think that somehow there was now less reason to grant a hearing, only more of a reason to do so, Your Honor. But did Judge Epstein ever definitively rule on the State's motion to dismiss? The State's argument is certainly going to be, Your Honor, that what he said was that he would hear those two issues at the same time. And that is where their argument comes in about this being a collapsing of the second and third stage. But given that he's directed at the second stage to determine if Mr. Galvin has made a substantial showing, and that's what he's supposed to do in granting an evidentiary hearing, I think we have to read his ruling that way. There's no – given that the record is unclear, there's no reason to say that, oh, he looked at this and he didn't make a decision. All he said was, I believe that there should be an evidentiary hearing, and we should conclude from that that he did so by finding that Mr. Galvin had made a substantial showing that he was entitled to such a hearing. In other words, Your Honor, there's no evidence on the record to suggest that he was saying, well, I'm not determining if he's made a substantial showing. What he said on the record was something to the effect of, I think this is an issue that needs to be fully heard, and that's why there's going to be a hearing on it. The State would argue that it was more broad than that, that Judge Epstein's position was the only way these things are fully and fairly aired is if we proceed to a third stage, right? But I think in this situation, Your Honor, you can – we should assume, I mean, given the absence of other explanation from Judge Epstein or other evidence in the record, that he meant in these circumstances, meaning a circumstance in which someone like Mr. Galvin has presented substantial new evidence in the form of affidavits and other evidence that needs to then be resolved. I don't think that you can read Judge Epstein's ruling to say, well, I don't think I really have to make a second stage determination. I just think any time someone files, we then go to the third stage. He did some analysis and consideration at that second stage and said, in these circumstances again, meaning in a situation like Mr. Galvin's where there's significant evidence, that should then go forward to the third stage. That should be the standard of review in this case in your judgment. This should be de novo review because both Judge – I mean, if Judge Brosnahan even had any authority to step in and change what Judge Epstein did, that authority would have come from her reconsidering a legal determination that was incorrect, and so this should be de novo review. Unless Your Honors have any other questions, I'm happy to reserve the remainder of my time for rebuttal. Thank you, Your Honor. Thank you. Good morning, Your Honor. Again, Michelle Grimaldi-Stein, Assistant State's Attorney for the people of the State of Illinois. As an initial matter, the people would note that de novo review in this case is only appropriate for the very first issue, whether or not Judge Brosnahan had the legal authority to reconsider Justice Epstein's ruling awarding an evidentiary hearing. And this is because this is the only issue for which the rest of the State of Illinois trial record in this case is complete. The record is missing all of the trial record, many of the pleadings filed below, the documents relied on, specifically the affidavit of Socorro Flores, which counsel has discussed both in her brief and to this Court. And as a result, this Court does not have the same documents before it that the Circuit Court had when it issued its ruling. And when a court is faced with an incomplete record, it indulges in every reasonable presumption that the lower ruling was correct. The record as compiled, incomplete as it is, supports that presumption. And therefore, this Court must grant deference to Judge Brosnahan's ultimate ruling in this case. Just so that I'm clear, Counsel, does the record contain everything that Justice Epstein had before him when he considered the issue? No, Your Honor. It does not? No. What's missing? The trial record. He had the trial record? Yes, sir. In front of him? Yes, sir. When they reconstructed the record, they specifically, that's what was lost. What happened is when this case left Judge Justice Epstein's courtroom and moved, the boxes of volumes and volumes went, followed, first to Judge, I'm sorry, I can't remember the first judges, then it was Judge Egan. And it's believed that some painters who were painting Judge Egan's courtroom threw the boxes away and that contained all the record. But all of this information was then reconstructed and compiled and provided to the circuit court below. And notably, Counsel used all this information in writing her brief, but didn't provide it to the State and hasn't provided it to this Court. And the State would affirmatively object for the record now. Counsel's reply brief six weeks ago indicated that she intended to file a motion to supplement the record now with all of this information. And the State would vehemently object to allowing advocacy by ambush at this point in time and to allow that record to be supplemented. Moving on, before this Court can consider any of the merits of the claims presented in the variety of petitions filed below, it must first consider whether the defendant was entitled to successive post-conviction proceedings. And that is made clear by the Supreme Court decision in Szabo and in Edwards and in Tidwell. That is a preliminary need. Before you address that issue, tell me why Judge Brosnahan had the right to review or to reverse or change Justice Epstein's order? Your Honor, as presented in the defendant's brief, the issue was whether or not Judge Brosnahan had the authority. And their position was that the people's motion for a supervisory order to the Supreme Court was tantamount to the appellate review necessary to implicate the doctrine of the law of the case and to have it to attach to Judge Epstein's award. Counsel, you cited Balcionis v. Duff in your brief, I think. Yes, sir. I want you to just address the question of whether or not Judge Brosnahan applied the right rules when she reversed Justice Epstein's order based on Balcionis v. Duff. Your Honors, the concept is whether or not the Justice, that Judge Brosnahan reviewed the proceedings up to that date and determined that the order awarding an evidentiary hearing had been properly entered. Or was there a manifest injustice that had been done? And there was a manifest injustice that had been done because Judge Epstein awarded an evidentiary hearing without complying with the terms of the Post-Conviction Hearing Act. And the Post-Conviction Hearing Act, Section 122-3, explicitly states that any claim not raised in an amended, or an original or an amended petition is waived. And it is incumbent now under Section 122-1F, but before that under the doctrines espoused in People v. Flores and People v. Pitsenbarger, for a court to make an original determination whether there exist procedural bars which preclude review of issues in a successive petition. That is a mandatory requirement. It is a requirement that Justice Epstein did not conduct. How do you know that? It's not incumbent upon him to articulate the basis for his ruling, but just to rule, right? Yes, Your Honor. But the Justice, when the State made its original special motion to dismiss based on timeliness, and I would note for the record that counsel's current claim that the Post-Conviction Hearing Act only allows for one motion to dismiss, that was a new issue raised in their reply brief. That was never discussed in their original brief. But be that as it may, the State at that time requested the court, we'd like to file this special motion to dismiss based on timeliness, and depending on your ruling, we would then like to file a second motion to dismiss. The court didn't say, no, no, no, we're going to do it all at once. The court allowed the motion to dismiss based on timeliness, during arguments talked to opposing counsel about the cause and prejudice issue, and about her ability or inability to prove cause and prejudice, but then ruled simply that he wasn't going to consider procedural matters that might bar reconsideration of these issues. So his order was that I'm not really considering it, and when we said, Your Honor, we'd like to file a motion to dismiss, he said, oh, you can file that on the date of the evidentiary hearing. So it's very clear that that step that's required by the Post-Conviction Hearing Act was never complied with. And because that step was never complied with, because it's a necessary prerequisite to further post-conviction proceedings, once Judge Brosnahan realized that that step had never been complied with, she was wholly within her discretion to move those proceedings back to second stage and to require that full litigation of that motion to dismiss. But Judge Epstein allowed the filing of an additional motion to dismiss as part and parcel of the motion to reconsider the original special motion. Allowed the filing, never entered any ruling. But he allowed the filing, and he also indicated that on the date of the hearing, he would entertain that and then proceed to the hearing if necessary, right? I don't think that he said if necessary, but I don't have. He did, and that would suggest that he was entertaining that, wouldn't it? In which case, then, it wouldn't have been inappropriate for Justice Brosnahan to do the same thing, to entertain that motion to dismiss. Let me ask you this. What should the standard of review be in determining whether Judge Brosnahan erred in reversing, essentially reversing Judge Epstein's order granting a third stage hearing? That is an abuse of discretion standard. But is it discretion? How could it be abuse of discretion? Does the Court have discretion in granting that, or is that just a question of? I'm sorry, Your Honor. Does the Court have discretion in granting what? A third stage hearing. Judge Epstein doesn't have discretion. It's a question of law, isn't it? No, Your Honor. For a third stage hearing to be granted? I would argue that it was probably a mixed question of law and fact, whether or not the defendant had made a substantial showing of a constitutional violation would then be a decision as to whether or not the facts alleged in the petition were sufficient in themselves and whether the documents appended to the petition were sufficient in themselves. Those rulings, however, Judge Epstein never made. But you're saying it's within a trial court's discretion to grant a third stage hearing? Is that your position? Yes, Your Honor. It is within the trial court's discretion. A circuit court's discretion based on the determination of whether or not a substantial showing of a constitutional violation has been made, which is then reviewable de novo. The ultimate issue of whether or not a substantial showing has been made and an evidentiary hearing warranted is reviewed de novo by this Court. Even if this Court finds that Justice Brosnahan should not have reconsidered that order, the case of People v. Szabo in the Supreme Court abundantly demonstrates that this Court gets to consider everything itself. This Court is free to start from the beginning and determine whether or not the circuit court correctly allowed post-conviction proceedings in this case to proceed. And a review of the incomplete record as it is demonstrates that the defendant was not entitled to file successive post-conviction proceedings. First of all, all the claims, the Post-Conviction Hearing Act explicitly is limited to issues which have not been and could not have been previously presented. All of these issues are based on counsel's performance at trial, witnesses or information known prior to trial, or events which are matters of record. Therefore, they could have been presented when post-trial the defendant discharged his trial attorney and hired private attorney Mr. Frederick Cohn to file a motion for a new trial and Mr. Cohn filed numerous allegations of ineffective assistance. He was allowed to supplement the record with evidence to hoarse the record. All of these claims could have been presented there. That means we don't know what was presented and what was argued in that motion for a new trial because, again, that isn't part of the record. But the fact that they could have been if they were their res judicata, if they weren't, they're procedurally barred. There also, they could have been raised in his initial petition. Once again, the defendant retained very well-respected, very well-qualified post-conviction counsel. Kathleen Zellner represented him on his first PC and prepared that petition. Now, the procedural default that's a result of defendant's failure to raise them in the first petition is qualitatively different than the procedural default for Mr. Cohn's failure to put them in the motion for a new trial because 122-3, under which that procedural default falls, is a limitation by the legislature on the parameters of relief afforded by the Post-Conviction Hearing Act. It is not just a waiver that this court or any court can disregard. 122-3 says unless you establish, unless you include it in your original or your amended petition, a claim is waived. And 122-1F says the only way you can have a waived claim presented in a successive proceeding is if you show cause for your failure to present it earlier and you show prejudice. And the defendant has never, ever established cause or prejudice. Judge Epstein has found that he did. Judge Epstein never ruled on cause and prejudice. Well, didn't the judge, Judge Epstein, indicate that he had considered all of the submissions and even give the state, you're suggesting that that motion was never heard, that subsequent motion. Didn't he also state, though, that he'd considered the submission, give the state an opportunity to supplement that in any way, ask them if they had anything to add to their written filings, and the state said no. And then the judge clearly indicated that we won't consider, I won't consider any oral argument because I have all this before me. Is that what he said? Your Honor, it may be. I don't actually recollect, but it doesn't matter. Because, again, this court is charged with making a de novo review of that determination. And there is no way upon a de novo review that there has been any cause or prejudice shown. The only attempt that counsel has ever made to demonstrate cause is a very anemic argument that post-conviction counsel should have recognized these issues and should have put them in. But that doesn't apply to the actual innocence claim, right? First of all, there is no actual innocence claim. It was never raised in any petition. And the Post-Conviction Hearing Act explicitly requires that the petitions enunciate clearly the claims. The defendant had a pro se petition, a first supplemental petition, a second supplemental petition, and a third supplemental petition. Actual innocence was never mentioned in any of them. Never mentioned. Actual innocence was included in a 651C certificate. A little thing. And these petitions, this includes a claim of actual innocence. That does not comport with the Act's requirements that the petition enunciate clearly the claims. That's number one. Number two, during, in the reply to the State's motion to dismiss, the defendant raised allegedly the claim. We don't know because that reply isn't part of the record on appeal. But the defendant raised the affirmative defense of actual innocence. Actual innocence isn't an affirmative defense. And he argued it that way in the motion to dismiss. There simply never was a claim of actual innocence. When the defendant realized he couldn't get around cause and prejudice, when he realized that he was going to have to deal with the viable arguments in the State's motion to dismiss, that's when actual innocence allegedly came into play in this court, in this claim. But that's not a technical defect, as the defendant argues in his reply brief, a technical pleading defect. It was an intentional decision by post-conviction counsel. And if you read post-conviction counsel's arguments to Justice Epstein, when they're talking about cause, she's clearly discussing cause and prejudice as to why all these claims that she's now raised in her first and second supplemental petition should be considered. If this were an actual innocence claim, she wouldn't have had to talk about cause and prejudice. So she didn't intend to raise an actual innocence claim. Secondly, it wasn't a freestanding claim. And that's what the Illinois Supreme Court's very limited in exception in Washington, as further discussed in Hobley and Orange, it requires a freestanding claim, not a claim that's also being used to support another constitutional violation. But even if this court were to examine this information as an actual innocence claim, it doesn't qualify as an actual innocence claim. It is not in Justice Freeman's well-reasoned opinion for a unanimous court in Edwards. This evidence isn't new. It isn't something that couldn't have been discovered through the exercise of due diligence. It is cumulative, especially if this court considers Socorro Flores's affidavit. And it is not so conclusive that it raises the probability that it is more likely than not that no reasonable juror would have convicted the defendant in light of the new evidence. As Justice Freeman pointed out, the Supreme Court cases on which that new test, that colorable claim of actual innocence is taken, it requires new, reliable evidence. And he explicitly quoted trustworthy eyewitness accounts. Neither Partita's current affidavit nor Flores's new claims that 22 years later she could remember seeing faces that she couldn't remember seeing immediately after the offense provide the trustworthy new evidence which is spoken of in Edwards. The defendant, not only is this evidence not new, and the defendant's argument as to why this evidence is new is, well, I can't be faulted for not discovering this information sooner than Partita and Flores were willing to reveal it. If that qualifies as new evidence, the exception has just swallowed the rule. In point of fact, both of these witnesses have claimed in their later affidavits that they told this information to police. So if they told it to police at the time of the offense, then clearly the defendant could have discovered it sooner. Partita's information did not exonerate the defendant. It merely contradicted Ramirez's testimony. It was affirmatively rebutted by the record and by Partita's own previous affidavit. In 1987, he told police that Ramirez and Rodriguez said that they recognized the boys in the alley from the neighborhood, but that he didn't get a good look at them. In 1988, before trial, he told a defense investigator the same thing. In 1995, he swore out an affidavit, again saying he didn't get a good look at the young men, and that because of the distance and the darkness in the alley that night, he knows that Jose Ramirez could not have seen them either. So therefore, the only thing we have is an affidavit that doesn't even need to be accepted as true, because it itself is contradicted by the record. That is not a viable claim of actual innocence. Flores' affidavit, as I said, is not properly before this Court, because the only place that it appears in the record is as part of a pro se motion that both Judge Epstein and Judge Brosnahan denied leave to file and explicitly ordered stricken. It is not appended to any document that the defendant properly had filed. But even if this Court does consider it, it too is not new. So Cora Flores testified at trial. She was available to be interviewed prior to trial. As the assistant public defender that represented the defendant below asserted, what she said in her affidavit was basically the same as her trial testimony. Therefore, that information is cumulative. The jury heard that information. They even heard Cora Flores say that John Galvin wasn't one of the three boys in the alley. They convicted the defendant anyway. Clearly, this is not evidence which raises the probability that no reasonable juror would convict based on it. The pattern and practice evidence, which the defendant claims also supports his case of actual innocence, is clearly not evidence of actual innocence as demonstrated by the Supreme Court's opinion in People v. Rice, where such evidence was considered under the cause and prejudice analysis for successive petitions. Moreover, there was no evidence. Assistant public defender Jacobs stated that he intended to present numerous witnesses at the hearing. He failed to provide a single affidavit of any of those witnesses. The only information that existed were OPS reports regarding two defendants. In each of those OPS reports, the claims that Switzke had abused them were either found not sustained or unfounded. And the cases that the defendant cited are not evidence because he never made the prerequisite showing to allow for the admission. Those cases are factually dissimilar to his. None had independently documented evidence of abuse, and the defendant was not diligent in discovering them. Additionally, the court here properly found that the defendant failed to show any signs of injury at the time his confession was taken. He did not report having been injured, and he did not testify at his own motion to suppress that he had been beaten. Based on all of this information, Judge Brosnahan properly found that the defendant had not presented a viable claim of actual innocence that could go forward in successive proceedings. And so I'm completely clear. Your position is that the standard of review as it relates to Judge Epstein's granting of a third stage is abusive discretion, and as it relates to Judge Brosnahan's order overturning, essentially, Judge Epstein's order, is abusive discretion. Is that what you're saying? No, Your Honor. I believe that the order awarding initially, generally, when this court reviews an order awarding an evidentiary hearing, when the record is complete, it is a de novo review. And the issue of whether or not Judge Brosnahan had the authority, whether the law of the case precluded her review of that original interlocutory order, I would assume would be a de novo review because that's a question, a pure question of law. Whether or not Judge Brosnahan properly reversed that order would be whether she abused her discretion in going back  It's getting somewhat confusing. I believe that her ultimate conclusion that the people's motion to dismiss should be granted would be a de novo review. Whether she rightfully went back and looked at and revisited the ruling on motion to dismiss or the failure to review would be whether she abused her discretion. I think that's how it would work. But I'm always willing to do a graph and we can figure that out. I understand your position. If there are no other questions, Your Honor, I think I've pretty much covered that cause and prejudice has not been established. I'm happy to go through ruling on the merits of all of the defendant's issues. I don't think this Court should reach them because the defendant has never demonstrated that he is entitled to successive post-conviction proceedings. And for all these reasons and the reasons stated in the people's brief, we would respectfully request that you affirm the lower court's ruling. Thank you, Your Honor. Thank you. Ms. Thomas. Your Honors, I want to address the issue of the record. The record in this case is a mess. I mean, I think that's clear to all parties. Current counsel for Mr. Galvin took this case over after the record had been prepared by the State Appellate Defender's Office. And I freely admit that in filing our brief, I didn't understand that these other documents were not actually included in the record. And that's my error. That's why we asked for an opportunity to supplement the record with the additional things that were missing. And since I learned that these documents had not been filed before the court in the record, I've been diligently trying to get the Circuit Court of Cook County to prepare the supplement. Because, again, as counsel discussed, the original record on appeal has been lost, which couldn't be found. And we've been working with them to try to get these other documents supplemented and included. And despite our diligence, we have not been able to get them to complete that process. So this court did grant a motion to supplement, and we're still trying to do that to make clear that this evidence is before the court. And if this is an issue that is necessary for Your Honors to rule on this issue, which, as Your Honors have discussed, if you believe that Judge Epstein properly ruled in the first place, I don't think that you need those records to rule. But if you feel that you do, I'm asking for the opportunity, again, to continue to get these records supplemented from the Circuit Court of Cook County. Because it's not Mr. Galvin's fault that there are these problems at this point, and he shouldn't have to suffer for whatever problems there have been in developing the record, particularly because there have been all these issues with the records getting lost in the first place, as counsel discussed, that as this case proceeded in those years through the Circuit Court of Cook County, these documents were misplaced. And that's not Mr. Galvin's fault, and it's not something that he should be held responsible for. And it makes sense to deal with these issues now rather than having this come back at some point in the future to discuss the reasons that the record wasn't prepared. But as Your Honors have raised, potentially, I don't think you need those other briefs to rule on the issues. And further ---- Well, the half sheet is particularly concerning, because if Judge Epstein didn't explicitly rule on the State's final motion to dismiss, he may have very well done so on the half sheet. Yet that's not part of the record before this point. Then I'd like the opportunity to continue to try to supplement the record to make sure that you have what you need before you to decide. Do we know that that exists? I don't actually, as I stand here today, I don't for certain know if it does or not. But I'm happy to get an answer to Your Honors about that question even today and to file something supplementally addressing that issue. That's an issue you had to jump right out at you when you were dealing with whether Judge Epstein definitively addressed the issue. And I confess, Your Honors, that as I stand here, I don't recall seeing that the half sheet addressed that issue, which is why I'm saying I can't tell you for certain, but my memory is that it does not. But I don't want to represent to Your Honors one way or another because I don't have it in front of me. Okay. That's the issue on the record then. And I want to say, too, that, you know, counsel talked about this as being argument by ambush. I mean, the records, although not certified, have been provided to the State. And I don't, other than the issue about Sephora Flores' affidavit being part of the record or not, I don't hear counsel saying that anything that we've cited in our brief is actually factually incorrect, although I understand that they may not feel they're in a position to say one way or another. So it's not really an issue of not knowing what those facts are, but it's about not having the official record in front of us to confirm, I think, is more the issue, setting aside what Your Honors said about the half sheets. I can discuss the cause and prejudice issue in more detail. But as we've talked about, I think Judge Epstein ruled on this. And I think if, and also, Your Honors, looking at the record, to the extent that there's some question in the record about whether or not cause and prejudice has been met, I think this isn't, Your Honors, this is an issue that should be resolved at an evidentiary hearing. If the affidavits are unclear about the opportunity that Mr. Galvin's counsel had to discover this information further, that's something that should be addressed by having Mr. Partita testify and ask him about what he would have said when. And I think, and also, Your Honors, and I apologize for keeping saying I think, if you also look at what the State argued about the actual innocence issues and about Mr. Galvin's opportunity to know sooner what Mr. Partita was going to say, they themselves even used as evidence that he could have discovered this earlier, that Mr. Partita is saying that he provided this evidence to members of the police department when he was interviewed. Well, that means that there is a Brady issue here potentially that needs to be resolved. The evidence in this case appears to be one side or the corner or the other. Either it's actual innocence evidence that couldn't have been discovered earlier, in which case it fits into that actual innocence claim, or there's an issue here with ineffective assistance and with Brady. And that's why we need an evidentiary hearing to uncover what the claims, where Mr. Galvin's claims really lie. As Your Honors know, because the rules of civil procedure apply, Mr. Galvin's allowed to conform his pleadings to what the evidence shows, and that's something he should be allowed to do at the conclusion of an evidentiary hearing in this matter, as Judge Epstein originally ordered. If Your Honors don't have any other questions. Thank you.  For the reasons that are stated in our briefs and stated today, we are asking on Mr. Galvin's behalf that the order granting his motion to dismiss be vacated and that Your Honors remand this back for an evidentiary hearing before the court. Thank you. I take the matter under advisement and commend you both. Thank you.